IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JESSE GORDON and AUDREY GORDON,<br><br>  Plaintiffs,<br><br>    vs.<br><br>REGENCE BLUECROSS BLUESHIELD of UTAH<br><br>  Defendant. | MEMORANDUM DECISION AND ORDER<br><br><br><br>Case No. 2:07-CV-531 DB |

  This case arises from a denial of medical benefits for orthognathic surgery – surgery to change the position of the upper or lower jaw bones – under a health benefits plan covered by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et. seq. ("ERISA").  Presently before the Court are: Defendant's motion for summary judgment, Plaintiffs' motion for summary judgment, Plaintiffs' motion for determination of standard of review, and Defendant's motion to strike portions of Plaintiffs' motion for determination of standard of review.  On June 24, 2008, the Court heard oral arguments by Mr. Brian King, representing Plaintiffs, and Mr. Timothy Houpt, representing Defendant.  Having considered the parties' briefs, the relevant law, and the parties' oral argument, the Court issues the following Memorandum Opinion and Order.

# I. BACKGROUND

Plaintiff Audrey Gordon, daughter of Plaintiff Jesse Gordon, was born with a congenital deformity that caused her jaw to grow in an abnormal way. Compl. ¶ 7; Ex. A to Def. Mem. in Supp. of Mot. for Summ. J. (hereafter Ex. A) 0097. Because of this condition, she had difficulty eating, chewing, swallowing, and speaking as she got older. Compl. ¶ 8. Audrey's healthcare providers recommended surgery as a remedy. Compl. ¶ 9.

Audrey has medical insurance through her father Jesse's Regence ValueCare group health insurance plan (the "Plan"). Compl. ¶¶ 1-2. On June 22, 2006, Dennis L. Dobson, D.D.S., an oral and maxillofacial surgeon, requested preauthorization from Defendant for orthognathic surgery – "reconstructive surgery . . . to return Audrey's upper and lower jaws to a more satisfactory functional relationship."[1] Ex. A 0042-43. In a letter dated June 28, 2006, Defendant denied preauthorization for the surgery, stating it is specifically excluded under the Plan. Ex. A 0032; Compl. ¶ 11. Although Defendant denied coverage, Plaintiffs believed that it was in Audrey's best interest to go ahead with her surgery, and on July 26, 2006, Dr. Dobson performed orthognathic surgery on Audrey's upper and lower jaws. Ex. A ¶ 15-17; Compl. ¶ 12.

On January 9, 2007, Audrey sent a second level appeal to Defendant, claiming her

---

[1] The letter dated June 22, 2006 does not specifically call the surgery "orthognathic surgery," but rather requests preauthorization for maxillary osteotomy and mandibular osteotomy. Audrey's surgeon, Dr. Dobson, in an insurance appeal letter dated July 11, 2006 stated "[Audrey] requires having orthognathic surgery to correct her jaw relationship." It described the proposed procedures as maxillary osteotomy and mandibular osteotomy, the same procedures referenced in the preauthorization request letter. Ex. A 0104. Plaintiffs concede in their memorandum in opposition to Defendant's motion for summary judgment that the surgery sought and obtained was orthognathic surgery. Def. Mem. in Supp. for Summ. J. ¶ 8; Pls.' Mem. in Opp'n to Def.'s Mot. for Summ. J. 2.

surgery was medically necessary and was not the type of surgery envisioned by the Plan's exclusion of orthognathic surgery.  Ex. A 0093-156.  Defendant upheld its denial of coverage for Audrey's surgery, making Audrey personally liable for $27,375.58 in medical expenses.  Compl. ¶¶ 19, 21, 25.  Plaintiffs filed their complaint against Defendant with this Court on July 20, 2007, alleging that Defendant violated the terms of the Plan by failing to pay for the treatment provided to Audrey.  Compl. ¶ 24.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment may be entered only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56.  The party seeking summary judgment has the burden of showing "that there is no genuine issue of material fact."  *WKB Enters., Inc. V. Ruan Leasing Co.*, 838 F. Supp. 529, 532 (D. Utah 1993).  "For purposes of summary judgment, . . . the court examines the evidence to determine if a reasonable jury could return a verdict in favor of the nonmoving party.  If it can, summary judgment should be denied."  *Id*.

## III. DISCUSSION

At the outset, Plaintiffs request that the Court identify whether the standard of review is *de novo* or arbitrary and capricious before addressing the cross motions for summary judgment.  However, the Court does not need to decide whether the standard of review is *de novo* or arbitrary and capricious because even under the most exacting standard of review, Defendant relied on an unambiguous exclusion in the Plan and properly denied Plaintiffs' claims relating to

Audrey's orthognathic surgery. The Court, as a matter of law, can construe an unambiguous contract. *Admin. Comm. Of the Wal-Mart Assocs. Health & Welfare Plan .v. Willard*, 393 F.3d 1119, 1123 (10th Cir. 2004) ("In interpreting an ERISA plan, the court examines the plan documents as a whole and, if unambiguous, construes them as a matter of law.").

In this case, preauthorization was requested for orthognathic surgery to adjust Audrey's jaw. Plaintiffs have never disputed this fact. The Plan clearly excludes this treatment:

> Exclusions
> No benefits will be provided for any of the following conditions, services, supplies, or accommodations, or for any direct complications or consequences thereof:
> . . . .
> Orthognathic Surgery
> Services and supplies to change the position (augmentation or reduction procedures) of a bone of the upper or lower jaw (Orthognathic Surgery).

Ex. A 0225, 0229.

There is no ambiguity in the Plan. The terms are not "reasonably susceptible to more than one meaning," and there is no "uncertainty as to the meaning of the term[s]." *Willard*, 393 F.3d at 1123 ("Ambiguity exists when a plan provision is reasonably susceptible to more than one meaning, or where there is uncertainty as to the meaning of the term.").

Plaintiffs attempt to create an ambiguity where none exists by arguing that the orthognathic surgery exclusion conflicts with two other Plan provisions. First, Plaintiffs argue that Audrey's orthognathic surgery was a covered service because it was "medically necessary," thus creating an ambiguity in what the Plan covers. The Plan states:

> Covered Services

> The following sections describe the Covered Services under the Plan.
>
> Except for any covered preventive care, the services and supplies You receive must be Medically Necessary for the treatment of an Illness or Injury in order to be considered a Covered Service. See the DEFINITIONS Section for a description of Medically Necessary.

Ex. A 0210.

The medically necessary provision is explicit – as a threshold matter, the treatment must be medically necessary in order to be covered. Defendant does not dispute that the treatment was medically necessary, and did not deny the claim on those grounds. A service can be medically necessary and qualify as a covered service unless it is excluded, which is the case with orthognathic surgery. "The generally accepted interpretive rule is that a general, preliminary clause should not ordinarily take precedence over specific provisions of a contract." *Time Warner Entm't Co., L.P. v. Everest Midwest Licensee, L.L.C.*, 381 F.3d 1039, 1057 (10th Cir. 2004) (quoting 11 Williston on Contracts § 32:15 (4th ed.)). Here, the specific orthognathic surgery exclusion preempts the general medically necessary provision. The medically necessary provision is not inconsistent with the orthognathic surgery exclusion.

Second, Plaintiffs contend that there is a conflict between the cosmetic services exclusion when read in connection with the orthognathic surgery exclusion, thus creating ambiguity. The cosmetic services exclusion states that no benefits will be provided for cosmetic and/or reconstructive services and supplies except for surgery that is performed to restore a physical bodily function. Ex. A 0226. Plaintiffs argue that Audrey's surgery was reconstructive and was performed to restore a physical bodily function. In support, Plaintiffs cite to Dr. Dobson's

characterization of Audrey's surgery as "reconstructive surgery . . . to return Audrey's upper and lower jaws to a more satisfactory functional relationship." Ex. A 0042. Furthermore, the surgery was to improve Audrey's eating, chewing, swallowing, and speaking functions. Plaintiffs contend, therefore, that Audrey's surgery was a covered service under the cosmetic services exclusion, thus creating an ambiguity in what the Plan covers. The Court disagrees.

Quite simply, Audrey's treatment does not fit under the cosmetic services provision because it is explicitly excluded by the orthognathic surgery exclusion. Plaintiffs admit that Audrey's procedure was proposed as orthognathic surgery. The clause stating "No benefits will be provided for . . . [s]ervices and supplies to change the position (augmentation or reduction procedures) of a bone of the upper or lower jaw (Orthognathic Surgery)" means Audrey is not entitled to benefits for orthognathic surgery. There is no ambiguity. The orthognathic surgery exclusion is clear, and Audrey's treatment was properly denied by Defendant.

Furthermore, a court should not interpret a contract in such a way to render a term of a contract meaningless. *See*, *e.g. United Nat. Ins. Co. v. Int'l Petroleum & Elxploration*, 2007 WL 4561460, at * 5 (D. Utah Dec. 20, 2007). If the Court were to credit Plaintiffs' arguments, then many Plan exclusions would be rendered meaningless. As an example, the Plan excludes all dental services. Ex. A 0225, 0227. Consistent with Plaintiffs' reasoning, dental implants could be considered cosmetic surgery to restore a physical bodily function. Plaintiffs would argue that an ambiguity exists between the dental services exclusion and the cosmetic services exclusion, and the dental implants should be covered. This illogical reading of the Plan would render the dental services exclusion meaningless.

## IV. CONCLUSION

The specific exclusion for all orthognathic surgeries is not ambiguous in any way, nor is it contradicted or limited by the medically necessary provision or cosmetic services exclusion. Under either standard of review, *de novo* or arbitrary and capricious, the Court finds as a matter of law that Defendant properly denied Plaintiffs' claims as specifically excluded under the Plan.

Accordingly, the Court GRANTS Defendant's motion for summary judgment (Dkt. No. 14) and DENIES Plaintiffs' motion for summary judgment (Dkt. No. 33) in its entirety, including the request for prejudgment interest and attorneys' fees. The Court declines to reach the merits of Plaintiffs' motion for determination of standard of review. (Dkt. No. 16.) Accordingly, Defendant's motion to strike portions of Plaintiffs' motion for determination of standard of review is MOOT. (Dkt. No. 24.)

IT IS SO ORDERED

DATED this 4th day of August, 2008.

_____
Dee Benson
District Court Judge